ORIGINAL

FILED

APR - 4 2014

U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

No. 13-292 T
Filed: April 4, 2014
**TO BE PUBLISHED**

*******************************************

| | |
|---|---|
| NORMAN DOUGLAS DIAMOND AND ZAIDA GOLEÑA DEL ROSARIO, | Claim for Relief, RCFC 8(a)(2); Motion to Dismiss, RCFC 12(b)(1), 12(b)(6); |
| Plaintiffs, *pro se,* | Presenting Matters Outside Pleadings, RCFC 12(d); |
| v. | Motion for Summary Judgment, RCFC 56; |
| THE UNITED STATES, | When Facts Unavailable to Nonmovant, RCFC 56(d); Privacy Act of 1974, 5 U.S.C. § 552a; |
| Defendant. | 26 U.S.C. § 6402 (offsetting overpayments against liabilities); 26 U.S.C. § 6702 (fees assessed for frivolous tax returns); *Pro Se.* |

*******************************************

**Norman Douglas Diamond & Zaida Goleña Del Rosario**, Ome City, Tokyo, Plaintiffs, *pro se.*

**Michael J. Ronickher**, United States Department of Justice, Tax Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

This case represents one in a series of *pro se* Plaintiffs' efforts to obtain relief from federal taxes levied against them.[1] In this case, Plaintiffs seek refunds for tax years 2006–2011, and abatement of a "frivolous" filing fee assessed by the Internal Revenue Service ("IRS"), pursuant to 26 U.S.C. § 6702, for the 2008 tax year.[2]

---

[1] Based on the court's review, Plaintiffs have filed at least six different lawsuits challenging their tax liability: (1) *Diamond v. United States*, 107 Fed. Cl. 702 (2012); (2) *Diamond v. C.I.R.*, No. 003033-12S L (Apr. 17, 2012); (3) *Diamond v. C.I.R.*, No. 13878-12S (T.C. Aug. 28, 2012); (4) *Diamond v. C.I.R.*, No. 005518-12S L (T.C. Sept. 28, 2012); (5) *Diamond v. C.I.R.*, No. 014482-10S L (T.C. Sept. 30, 2013); and (6) *Diamond v. C.I.R.*, No. 005516-12S L (T.C. Dec. 19, 2013).

[2] Hereinafter, the Internal Revenue Code will be cited as "I.R.C."

## I.   RELEVANT FACTUAL BACKGROUND.[3]

Norman Douglas Diamond and Zaida Goleña Del Rosario (collectively "Plaintiffs") are married United States taxpayers residing in Tokyo, Japan. Pl. Ex. A at 5. From 1992 through 1994, the IRS sent Plaintiffs' tax documents (and other correspondence) to their address in Japan, and displayed Mr. Diamond's social security number on the outside of the envelope. Compl. ¶ 8. Sometime in 1994, Mr. Diamond found an undelivered letter from the IRS in "a public thoroughfare" that publicly displayed his name, address, and social security number. Compl. ¶ 12. As a result of the IRS's actions, Mr. Diamond's social security number was "abused." Compl. ¶ 31. Sometime in 1993 and 1994, Mr. Diamond wrote to the Government, requesting a statement as to how the public display of his social security number complied with the Privacy Act of 1974, 5 U.S.C. § 552a. Compl. ¶ 9. He never received a response. Compl. ¶ 10.

Around February 21, 1994, Ms. Del Rosario applied for a social security number by submitting Form SS-5 (Application for a Social Security Card) to the Social Security Administration ("SSA").[4] Compl. ¶ 6; Pl. Ex. A at 3. The Complaint alleges that, because of the Government's public display of Mr. Diamond's social security number, he applied for a replacement on March 24, 1994 by submitting Form SS-5 to the SSA. Compl. ¶ 4. Mr. Diamond's application was incomplete. Pl. Ex. A at 62 (A letter from Mr. Diamond explaining that he submitted a "nearly completed Form SS-5," because he intentionally did not list his current social security number and declined to answer other questions). Mr. Diamond's March 24, 1994 application also included an attached letter, stating that he would write "'[a]pplied for' or other suitable response [in the future] on any U.S. [G]overnment document that makes a legal demand for [his] social security number." Pl. Ex. A at 62.

In 2007 and 2009, and on other times during this period, Plaintiffs applied for individual taxpayer identification numbers ("ITIN") by submitting Form W-7 (Application for IRS Individual Taxpayer Identification Numbers) to the IRS. Compl. ¶¶ 5, 7, 25–29.

---

[3] The relevant facts discussed herein were derived from: Plaintiffs' April 25, 2013 Complaint ("Compl.") and Exhibits attached thereto ("Pl. Exs. A–C"); the Government's August 23, 2013 Motion To Dismiss and Exhibits attached thereto ("Gov't Mot. Exs. A–B") (certified copies of Mr. Diamond's tax records for years 2005–2011); Plaintiffs' September 3, 2013 Objection To Motion To Dismiss ("Pl. Resp.") and Exhibit attached thereto ("Pl. Resp. Ex. A"); Plaintiffs' October 8, 2013 Sur-Reply To Motion To Dismiss ("Pl. Sur-Reply") and Exhibit attached thereto ("Pl. Sur-Reply Ex. A"); and Plaintiffs' October 28, 2013 Supplement To Sur-Reply ("Pl. Supp.") and Exhibit attached thereto ("Pl. Supp. Ex. A"). None of Plaintiffs' exhibits are numerically paginated. Therefore, the citations herein to particular pages reflect their order within the exhibit.

[4] The Complaint does not indicate whether the application was for an original social security number or for a replacement.

On July 10, 2010, Mr. Diamond submitted a revised application for a replacement social security number to the United States Embassy in Tokyo. Pl. Ex. A at 55. On September 7, 2010, the SSA denied Mr. Diamond's application. Compl. ¶ 4.

In January 2011, after rejecting both of Plaintiffs' ITIN applications, Plaintiffs received ITINs. Compl. ¶¶ 5, 7, 34. The Complaint alleges that, to date, the SSA has not acted on Ms. Del Rosario's application for a social security number. Compl. ¶ 6.

The court now turns to the relevant facts for each of the tax years 2006–2011, and then to the frivolous filing fee assessed for the 2008 tax year.

### 2006 Tax Year

On June 9, 2007, Plaintiffs submitted a joint tax return by filing Form 1040 with the IRS ("2006 tax return"), requesting a refund of $10,762.35, which was received by the IRS on June 16, 2007. Compl. ¶¶ 40, 49; Pl. Ex. A at 5–6. This return reported $2,511.21 in adjusted gross income, and included: Schedule A (Itemized Deductions); Schedule D (Capital Gains and Losses); a Capital Loss Carryover Worksheet; Form 6781 (Gains and Losses From Section 1256 Contracts and Straddles); Form 1116 (Foreign Tax Credit); and an accompanying "statement concerning the tax return." Pl. Ex. A at 8–20. The statement explained, among other things, that "some estimates and errors are nearly certain." Pl. Ex. A at 21–23.

The 2006 tax return also contained several anomalies. First, neither Mr. Diamond nor Ms. Del Rosario included their social security numbers on the return, instead referring the IRS to the attached "statement concerning the tax return" through a notation that read "see statement." Pl. Ex. A at 5. Second, Plaintiffs listed "$0.00" in income, writing "see statement" on line 7 (wages, salaries, tips, etc). Pl. Ex. A at 5. Third, Plaintiffs crossed out portions of the jurat above the signature line on the 2006 tax return.[5] Pl. Ex. A at 6. Specifically, Plaintiffs crossed out the text "to the best of my knowledge and belief, [the statements contained herein] are true, correct, and complete," replacing that line with "the accompanying statements explain our knowledge and belief." Comp. Ex. A at 6. Plaintiffs also made several additions on the 2006 tax return, crossing out various lines of text and replacing them with handwritten notes. Pl. Ex. A at 6. Fourth, many of the forms accompanying Plaintiffs' Form 1040 contained handwritten alterations and added explanatory text. *See* Pl. Ex. A at 8–20.

On January 15, 2008, the IRS informed Plaintiffs that the 2006 tax return was deemed frivolous under I.R.C. § 6702. Compl. ¶ 43. Accordingly, on June 2, 2008, the IRS assessed a $5,000 fee against Plaintiffs. Gov't Mot. Ex. B at B-9; *see also* Pl. Resp. Ex. A at 11.

---

[5] The jurat requires a taxpayer to sign the Form 1040 under penalty of perjury. In its unadulterated form, it reads: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge." Pl. Ex. A at 6.

On May 19, 2009, the IRS issued a Notice of Federal Tax Lien, because Plaintiffs failed to pay the civil penalties assessed pursuant to I.R.C. § 6702 for tax year 2006. Pl. Resp. Ex. A at 9–14. On June 9, 2010, following a Collection Due Process hearing, the IRS issued a Notice of Determination that sustained the Notice of Federal Tax Lien for tax year 2006. Pl. Resp. Ex. A at 9–14.

On February 6, 2012, Mr. Diamond filed an individual 2006 Form 1040 tax return ("corrected 2006 tax return") that reported $1,048 in adjusted gross income and requested a refund of withholding. Gov't Mot. Ex. A at A-2. This return did not have the same deficiencies as the 2006 tax return and the IRS assessed $0.00 in tax liability. Gov't Mot. Ex. A at A-2. Since Mr. Diamond made payments of $116.95 through withholding, the IRS applied this overpayment to Mr. Diamond's other outstanding tax liabilities. Gov't Mot. Ex. A at A-2. On May 29, 2013, payments made by Mr. Diamond of $500 and $150 also were applied towards his outstanding tax liability for the 2005 tax year. Gov't Mot. Ex. A at A-2. The current balance for Mr. Diamond's 2006 tax year account is $0.00. Gov't Mot. Ex. A at A-3.

**2007 Tax Year**:

It appears that, on August 7, 2008, Plaintiffs filed a tax return with the IRS, although that return was not included in Plaintiffs' submissions to the court. Pl. Ex. A at 31. On August 3, 2010, Plaintiffs spoke with an IRS representative who pointed out certain defects in Plaintiffs' August 7, 2008 return. Compl. ¶ 73.

On August 27, 2010, the IRS sent a letter to Plaintiffs stating that Plaintiffs' August 7, 2008 return also was deemed to be frivolous under I.R.C. § 6702, because there was "no basis in the law for [Plaintiffs'] position." Pl. Ex. A at 30–31; *see also* Compl. ¶ 71. That letter warned that Plaintiffs would be fined $5,000, unless they filed a corrected tax return within 30 days after receipt of the letter. Pl. Ex. A at 31–32. The letter did not, however, explain what aspect of Plaintiffs' tax return the IRS considered to be frivolous. Compl. ¶ 71.

On September 5, 2010, Plaintiffs filed a joint tax return reporting $2,505.76 in adjusted gross income ("2007 tax return"), together with: Form 4868 (Application for Automatic Extension of Time To File U.S. Individual Tax Return); Form W-7; a Foreign Earned Income Tax Worksheet; a Qualified Dividends and Capital Gain Tax Worksheet; Schedule B (Interest and Ordinary Dividends); Schedule D; a Capital Loss Carryover Worksheet; Form 6781; and Form 1116. Pl. Ex. A at 35–54.[6]

Like the 2006 tax return, the 2007 tax return contained several anomalies. First, rather than providing their social security numbers, Plaintiffs wrote "[social security number]: applied for . . . ITIN: rejected." Pl. Ex. A at 35. Second, Plaintiffs listed "$0.00" in income, writing "see statement" on line 7 (wages, salaries, tips, etc). Pl. Ex. A at 35. Third, although Plaintiffs did not alter the jurat on this tax return, they included a notation that the jurat was "signed in obedience of instructions from [the United States] Treasury." Pl. Ex. A at 36. Fourth, many of

---

[6] The Complaint alleges that this corrected and accepted return was sent within 30 days of the receipt of the August 27 letter. Compl. ¶ 76.

the forms accompanying Plaintiffs' Form 1040 contained handwritten alterations and statements. *See generally* Pl. Ex. A at 35–54. Nevertheless, the IRS accepted the return and assessed $0.00 in taxes. Gov't Mot. Ex. A at A-5. Since Plaintiffs made $131.49 in payments through withholding, that overpayment was applied to Plaintiffs' other outstanding tax liabilities. Gov't Mot. Ex. A at A-5.[7]

On February 24, 2011, the IRS issued a Letter 1058 to Plaintiffs, stating that the IRS intended to issue a levy against Plaintiffs' bank accounts, wages, or other assets, because they had an outstanding unpaid balance on their 2005, 2006, and 2007 tax years. Pl. Ex. B at 32. On March 10, 2011, the IRS received Form 12153 from Plaintiffs, requesting a Collection Due Process Hearing. Pl. Ex. B at 32.

On June 13, 2011, the IRS received a letter from Plaintiffs requesting that the civil penalty assessed pursuant to I.R.C. § 6702 for tax year 2007 be abated. Pl. Ex. B at 7–8. On September 20, 2011, the IRS disallowed that claim. Pl. Ex. B at 7–8.

On February 9, 2012, the IRS issued a Notice of Determination that sustained the proposed levy. Pl. Ex. B at 30–34.

Plaintiffs' current balance for the 2007 tax year is $0.00. Gov't Mot. Ex. A at A-6.

**2008 Tax Year**

At an unidentified time, Plaintiffs submitted "what they believed to be a United States federal tax return for year 2008." Compl. ¶ 81. The IRS responded that it also considered this return to be frivolous under I.R.C. § 6702. Compl. ¶ 82.

On February 6, 2012, Mr. Diamond filed an individual 2008 1040 tax return with the IRS ("2008 tax return"), reporting $6,490 in adjusted gross income and $0.00 due in taxes. Gov't Mot. Ex. A at A-8. Because Mr. Diamond had made $192.31 in payments through withholding, this overpayment remains as a credit. Gov't Mot. Ex. A at A-8. Unlike prior years, the IRS did not apply that credit to Mr. Diamond's outstanding tax liability for other years, because his account had "been frozen [by the IRS] as [Mr. Diamond] pursues . . . various other litigations against the IRS." Gov't Mot. 7. Mr. Diamond's current balance for the 2008 tax year is a credit of $192.31. Gov't Mot. Ex. A at A-9.

**2009 Tax Year**

On October 7, 2010, Plaintiffs filed a joint 2009 1040 tax return reporting $36,443 in adjusted gross income ("2009 tax return"). Gov't Mot. Ex. A at A-11. The IRS assessed $0.00 in tax. Gov't Mot. Ex. A at A-11. Because Plaintiffs made $245.98 in payments through withholding, this amount remains as a credit. Gov't Mot. Ex. A at A-11–12. Like the 2008

---

[7] On November 26, 2010, Plaintiffs filed an amended tax return that also resulted in no additional tax being assessed. Gov't Mot. Ex. A. at A-5.

account, Plaintiffs' 2009 account has been frozen, and the overpayment has not been applied, because of litigation being pursued by Mr. Diamond. Gov't Mot. 7.

On February 7, 2011, the IRS issued a Notice of Adjusted Refund to Plaintiffs, stating that Plaintiffs were due a refund of $247.44, instead of than $245.98. Pl. Ex. B at 1–3. The Notice stated, however, that Plaintiffs would "receive a refund . . . within 4-6 weeks as long as [Plaintiffs] don't owe tax or debts [the IRS is] required to collect." Pl. Ex. B at 1. The current balance of Plaintiffs' 2009 account is a $245.98 credit. Gov't Mot. Ex. A at A-12.

### 2010 Tax Year

On August 15, 2011, Plaintiffs filed a joint 2010 1040 tax return reporting $34,079 in adjusted gross income. Gov't Mot. Ex. A at A-14. The IRS assessed $0.00 in tax. Because Plaintiffs made $157.50 in payments through withholding, this amount was applied towards Plaintiffs' outstanding tax liability for the 2006 tax year. Gov't Mot. Ex. A at A-14.

On September 26, 2011, the IRS issued a Notice to Plaintiffs, informing them that the IRS had applied the $157.50 overpayment for the 2010 tax year towards Plaintiffs' outstanding liability for the 2006 tax year. Pl. Ex. B at 10–12. The current balance on Plaintiffs' account for the 2010 tax year is $0.00. Gov't Mot. Ex. A at A-15.

### 2011 Tax Year

On June 14, 2012, Mr. Diamond filed an individual 2011 1040 tax return reporting $1,089 in adjusted gross income. Gov't Mot. Ex. A at A-17. The IRS assessed $0.00 in taxes. Gov't Mot. Ex. A at A-17. Because Mr. Diamond made $36.24 in payments through withholding, the IRS also applied this amount towards his outstanding liability for the 2006 tax year. Gov't Mot. Ex. A at A-17.

On July 16, 2012, the IRS issued a letter to Mr. Diamond, explaining that the IRS applied the $36.24 overpayment to the outstanding liability for the 2006 tax year. Compl. ¶ 101; *see also* Pl. Ex. B at 55 (July 16, 2012 IRS Notice). The letter stated that, since the IRS applied the 2011 overpayment to outstanding liability for the 2006 tax year, Plaintiff was "due a refund of $0.00." Pl. Ex. B at 55. The current balance of Mr. Diamond's 2011 account is $0.00. Gov't Mot. Ex. A at A-18.

### Frivolous Fee

On July 7, 2011, the IRS assessed a $5,000 fee against Mr. Diamond, pursuant to I.R.C. § 6702, for filing a frivolous income tax return in 2008 ("the 2008 fee"). Gov't Mot. Ex. B at B-20.[8]

---

[8] Mr. Diamond has a history of being assessed filing penalties under I.R.C. § 6702. For the 2005 tax year, he was assessed two $500 penalties and now has an outstanding balance of $403.77. Gov't Mot. Ex. B at B-2, B-7. For tax year 2006, Mr. Diamond was assessed two $5,000 penalties, and now has an outstanding balance of $9,806.26. Gov't Mot. Ex. B at B-9, B-

On August 5, 2011, the IRS received a letter from Mr. Diamond, requesting that the agency abate the 2008 fee. Pl. Ex. B at 42. On May 17, 2012, the IRS disallowed Mr. Diamond's request, because he failed to respond to an IRS 3176 letter or CP72 notice in a timely manner.[9] Pl. Ex. B at 42–43; *see also* Compl. ¶ 107. The August 5, 2011 letter advised Mr. Diamond that he could challenge the 2008 fee either in a United States District Court or the United States Court of Federal Claims. Pl. Ex. B at 42.

On May 31, 2012, Mr. Diamond filed a petition in the United States Tax Court, challenging the IRS' failure to abate the 2008 fee. Compl. ¶ 109; *see also Diamond v. C.I.R.*, No. 13878-12S (T.C. Aug. 28, 2012). On July 27, 2012, Mr. Diamond requested that the United States Tax Court transfer his case to the United States Court of Federal Claims. *See Diamond v. C.I.R.*, No. 13878-12S (T.C. Aug. 28, 2012). On August 28, 2012, the United States Tax Court dismissed the petition for lack of subject matter jurisdiction. *Id.*

## II.   PROCEDURAL HISTORY.

On April 25, 2013, Plaintiffs filed a Complaint in the United States Court of Federal Claims seeking a refund of withholding for their 2006–2011 tax years and an abatement of the 2008 fee assessed, pursuant to I.R.C. § 6702, for the 2008 tax year. The Complaint alleges that Plaintiffs are owed $881.93 in refunds for tax years 2006–2011. Compl. ¶ 157.[10] The

---

10, B-13. For the 2007 tax year, Mr. Diamond was assessed three $5,000 penalties, and now has an outstanding balance of $15,076. Gov't Mot. Ex. B at B-15, B-16, B-18.

[9] Letter 3176, also known as "Response to Frivolous Documents/Returns Received from Taxpayers," informs the taxpayer that the IRS considers a tax return to be frivolous and subject to penalty under I.R.C. § 6702, but "provides the taxpayer an opportunity to withdraw a frivolous return filing." *See* Internal Revenue Manual, Part 5: Collection Process, http://www.irs.gov/irm/part5/irm_05-020-010.html (last visited Apr. 3, 2014). A CP72 Notice likewise informs the taxpayer that the IRS considers a tax return to be frivolous, when it states a position or provides information that "has no basis in the law." Understanding Your CP72 Notice, http://www.irs.gov/Individuals/Understanding-Your-CP72-Notice (last visited Apr. 3, 2014). The CP72 Notice affords the taxpayer thirty days to file a corrected return, but failure to appropriately respond can result in a penalty of $5,000 being assessed. *Id.*

[10] The Complaint alleges the following amounts are owed for each year:

2006: $116.95 (Compl. ¶ 69);

2007: $131.49 (Compl. ¶ 80);

2008: $192.31 (Compl. ¶ 89);

2009: $247.44 (Compl. ¶ 95);

2010: $157.50 (Compl. ¶ 100);

2011: $36.24 (Compl. ¶ 105).

Complaint also alleges that the Government incorrectly determined that Mr. Diamond's 2008 tax return was frivolous and requests the abatement of the $5,000 fee. Compl. ¶¶ 2, 106, 157.

On August 23, 2013, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and 12(b)(6). On September 3, 2013, Plaintiffs filed a Response. On September 20, 2013, the Government filed a Reply. On October 8, 2013, Plaintiffs filed a Sur-Reply to the Government's Motion To Dismiss.

On October 11, 2013, the court issued an Order advising the Government that the August 23, 2013 Motion To Dismiss would be considered as one for summary judgment under RCFC 56, since both parties had substantially relied on matters outside the pleadings. *See* Order, *Diamond v. United States* (No. 13-292), Dkt. No. 14; *see also Martin v. United States*, 96 Fed. Cl. 627, 629 (2011) ("When matters outside the pleadings are presented and not excluded by the [c]ourt, a motion to dismiss under Rule 12(b)(6) is to be converted to a motion for summary judgment[.]"). Pursuant to RCFC 12(d),[11] the court's October 11, 2013 Order directed Plaintiffs to file any new information relevant to the factual contentions in Government's August 23, 2013 Motion To Dismiss on or before November 8, 2013. On October 23, 2013, Plaintiffs filed a Response, together with a Motion To Compel the Government to produce forms and communications concerning a related case filed by Plaintiffs in the United States Tax Court, Docket No. 14482-10SL. On October 28, 2013, Plaintiffs filed a Supplement to the October 23, 2013 Response. On November 6, 2013, the Government filed a Notice Of Election Not To File Supplemental Reply and an Opposition to Plaintiffs' October 23, 2013 Motion To Compel. On November 18, 2013, Plaintiffs filed a Reply.

On November 22, 2013, the court issued an Order that deferred ruling on Plaintiffs' October 23, 2013 Motion To Compel, to allow Plaintiffs to file a single submission to demonstrate why the discovery requested in the October 23, 2013 Motion To Compel was warranted under RCFC 56(d).[12] On December 2, 2013, Plaintiffs filed a Response. On December 5, 2013, the Government filed a Reply. On December 17, 2013, the court issued a Memorandum Opinion And Order denying Plaintiffs' October 23, 2013 Motion To Compel.

On January 2, 2014, the court issued an Order instructing the Clerk not to accept any additional filings in this case.

---

[11] *See* RCFC 12(d) ("If, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

[12] RCFC 56(d) provides, in relevant part, that if the party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer ruling on or deny a motion for summary judgment, or allow additional time to conduct discovery. RCFC 56(d).

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be 'money-mandating.'").

The Tucker Act authorizes the United States Court of Federal Claims to adjudicate tax refund claims if a taxpayer has paid the full assessed federal tax liability and timely filed a refund claim with the IRS stating the grounds for the claim. *See* 28 U.S.C. § 1491(a); I.R.C. §§ 6511(a), 7422(a); *see also Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full"). If the claim is denied by the IRS and the taxpayer timely files suit, the United States Court of Federal Claims has jurisdiction to adjudicate the tax refund claim. *See* I.R.C. § 6532(a); *see also* 28 U.S.C. § 1346(a)(1). The issue of whether the court has jurisdiction over Plaintiffs' claim for abatement of the 2008 fee is discussed more fully below.

### B.   Standard Of Review For Pro Se Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

**C.     Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797.

**D.     Standard For Decision On A Motion For Summary Judgment.**

On a motion for summary judgment, the moving party must establish that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Duramed Pharms., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011); *see also* RCFC 56(c). Only genuine disputes of material fact that might affect the outcome of the suit preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "[The] existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. "Courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

In a tax refund suit, "the ruling of the [IRS] Commissioner enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong." *Danville Plywood Corp. v. United States*, 899 F.2d 3, 7 (Fed. Cir. 1990) (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933) ("[The IRS Commissioner's] ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong.")); *see also Int'l Paper Co. v. United States*, 36 Fed. Cl. 313, 322 (1996) ("[A] tax refund suit in the Court of Federal Claims 'is a de novo proceeding, in which the plaintiff bears the burden of proof' with respect to each and every element of its claim." (quoting *Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 334 (1993)). Even if the presumption of correctness is overcome, the taxpayer still will carry the burden of proof at trial to show a finding contrary to that of the IRS. *See Helvering v. Taylor*, 293 U.S. 507, 515 (1935) ("Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid."); *see also Danville Plywood Corp.*, 899 F.2d at 7 (stating that to overcome the presumption of correctness, "the taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination").

E.     **Issues Raised By The Government's August 23, 2013 Motion to Dismiss.**

1.     **Whether The United States Court Of Federal Claims Has Jurisdiction To Adjudicate Plaintiffs' Claim For Abatement Of The 2008 Fee.**

a.  **The Government's Argument.**

The Government argues that the court does not have subject matter jurisdiction to adjudicate Plaintiffs' claim for abatement of the 2008 fee under RCFC 12(b)(1), because Plaintiffs have not paid the fee. Gov't Mot. 5. It is well established that prior to commencing a tax refund suit in the United States Court of Federal Claims, a taxpayer must fully pay all outstanding tax liabilities for the years in question on or before the date the complaint is filed. Gov't Mot. 5 (citing *Flora v. United States*, 357 U.S. 63, 72–73 (1958) ("[R]efund suits [can] only be maintained upon full payment of the tax alleged to be due."), *aff'd on reh'g*, 362 U.S. 145 (1960); *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002) (explaining that the United States Court of Federal Claims has jurisdiction to adjudicate federal tax refund claims, but "payment of the assessed taxes in full is a prerequisite to bringing a refund claim")); *see also id.* 6 (citing *Rocovich v. United States*, 933 F.2d 991, 993–94 (Fed. Cir. 1991) (requiring full payment of a tax assessment prior to commencing a refund action)). The full payment rule also encompasses penalties separately assessed against the taxpayer, such as those instituted under I.R.C. § 6702. Gov't Mot. 6 (citing *Nasharr v. United States*, 105 Fed. Cl. 114, 116, 119 (2012) (applying the full payment rule of *Flora* to "late filing and failure to pay penalties" assessed by the IRS)).

In this case, Plaintiffs have not yet paid the 2008 fee of $5,000, which remains an outstanding liability on Plaintiffs' account for the 2008 tax year. Gov't Mot. 6 (citing Gov't Mot. Ex. B at B-21) (IRS Certificate of Assessment); *see also id.* (citing *Rocovich*, 933 F.2d at 944 (stating that IRS transcripts of account are "presumptive proof of a valid assessment where the defendant has produced no evidence to counter this presumption" (internal citations and quotations omitted))). Since Plaintiffs' 2008 fee has not been paid, the court does not have jurisdiction to adjudicate Plaintiffs' abatement claim. Gov't Mot. 6.

b.  **Plaintiffs' Response.**

In response, Plaintiffs reference a May 17, 2012 IRS letter that denied Plaintiffs' claim for abatement of the 2008 fee, but advised that Plaintiffs "may file suit to recover tax, penalties, or other amounts . . . with the United States Court of Federal Claims." Pl. Resp. ¶ 5; *see also* Pl. Ex. B at 42 (May 17, 2012 IRS Letter). Plaintiffs argue that, if the court may not adjudicate the validity of the 2008 fee, that the Due Process Clause of the Fifth Amendment to the United States Constitution has been violated. Pl. Resp. ¶ 6. Plaintiffs further assert that the IRS has not adequately explained why Plaintiffs' 2008 tax return was deemed frivolous. Pl. Resp. ¶¶ 20, 24, 40. Finally, Plaintiffs assert they already paid some money to challenge the validity of the 2008 penalty assessment. Pl. 10/23/13 Resp. ¶ 4 (explaining that Plaintiffs paid $60 when they petitioned for review of the assessment in the United States Tax Court).

### c. The Court's Resolution.

Plaintiffs have failed to meet their burden to establish subject matter jurisdiction regarding their claim for abatement of the 2008 fee.[13]

The April 25, 2013 Complaint seeks an abatement of the 2008 fee assessed by the IRS. The Government produced a signed and sealed Certificate of Official Record and certified transcripts for Mr. Diamond that show he was assessed a $5,000 penalty "For Filing Frivolous Income Tax Return" for the 2008 tax year and that this assessment was unpaid as of August 21, 2013. Gov't Mot. Ex. B at B-19–B-21. Plaintiffs have offered no contradictory evidence.[14] These IRS certificates are presumptively correct where, as here, Plaintiffs offered no evidence to the contrary. *See Rocovich*, 933 F.2d at 994 ("A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made.").

As a matter of law, the "full payment rule requires that taxpayers prepay the tax principal before the Court of Federal Claims will have subject matter jurisdiction over their tax refund action under § 1491." *Shore*, 9 F.3d at 1527; *see also McNeil v. United States*, 293 Fed. App'x 758, 760 (Fed. Cir. 2008) ("Under the 'full payment rule,' a taxpayer must fully pay disputed taxes and seek a refund from the IRS before filing suit."). This requirement also applies, with exceptions inapplicable here, to penalties imposed by the IRS.[15] *See Nasharr*, 105 Fed. Cl. at

---

[13] Because the facts discussed above concern the court's subject matter jurisdiction, they may be considered when ruling on the Government's August 23, 2013 Motion To Dismiss. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) ("If a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the [trial] court may consider relevant evidence in order to resolve the factual dispute."); *see also Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) ("The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion. While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion[.]"). The court considers these materials only insofar as they pertain to the Government's arguments for dismissal based on lack of subject matter jurisdiction. *See Twp. of Saddle Brook v. United States*, 104 Fed. Cl. 101, 106 (2012) (explaining that the court should consider relevant factual evidence to determine if it has subject matter jurisdiction).

[14] Plaintiffs' contention that they paid $60 to challenge the 2008 fee in the United States Tax Court is irrelevant. Pl. 10/23/13 Resp. ¶ 4. First, full payment of any federal tax due is required to be paid prior to commencing suit. *See Flora*, 357 U.S. at 72–73 ("[R]efund suits [can] only be maintained upon *full payment* of the tax alleged to be due." (emphasis added)). A single $60 payment is not full satisfaction of a $5,000 obligation. Second, the $60 Plaintiffs paid appears to be the filing fee for commencing a petition in the Tax Court. *See* United States Tax Court, Fees and Charges (listing the Petition Filing Fee as $60.00), http://www.ustaxcourt.gov/fees.htm (last visited Apr. 3, 2014).

[15] In 1982, Congress relaxed the full payment requirement when it enacted I.R.C. § 6703(c)(1), which permits a taxpayer to contest a penalty imposed under § 6702 by bringing a refund suit after paying only 15 percent of the assessed penalty. *See*

119–20 (dismissing case for lack of subject matter jurisdiction where taxpayer had not fully paid a "failure to pay penalty").  Because Plaintiffs did not pay the $5,000 fee prior to commencing this lawsuit, the court does not have jurisdiction to adjudicate that claim.

Plaintiffs' remaining arguments against dismissal lack merit.  Although the IRS's May 17, 2012 letter may have misled Plaintiffs, the "IRS's letter cannot confer jurisdiction upon this [c]ourt.  Jurisdiction of federal courts is 'limited to those subjects encompassed within a statutory grant of jurisdiction.'"  *Colman v. United States*, 96 Fed. Cl. 633, 639 (2011) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)).  To the extent Plaintiffs assert a Due Process claim, the court does not have jurisdiction to adjudicate that claim.  *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("[C]ounts alleging violation[s] of . . . rights under the Due Process Clauses of the Fifth and Fourteenth Amendments . . . . [are not] a sufficient basis for jurisdiction because they do not mandate payment of money by the [G]overnment.").  For these reasons, Plaintiffs' claim for abatement of the 2008 fee must be dismissed.

### 2.   Whether The Complaint States A Claim For Refunds For Plaintiffs' 2006–2011 Tax Years.

#### a.   The Government's Argument.

The Government also argues that Plaintiffs have failed to state a viable refund claim for the tax years 2006–2011, because "[P]laintiffs have already received the requested refunds, in the form of a credit, and there is no money to recover."  Gov't Mot. 6.  It is true that Plaintiffs made overpayments in the tax years 2006–2011; however, the IRS has exercised the statutory right under I.R.C. § 6402 to apply those overpayments against Plaintiffs' outstanding tax liabilities in other years.  Gov't Mot. 6.  Under I.R.C. § 6401(c), when a taxpayer pays an amount in excess of that owed, those amounts are considered overpayments.  Gov't Mot. 6.  And, pursuant to I.R.C. § 6402(a), the IRS has the authority to credit tax overpayments from one year against tax deficiencies in prior years.  Gov't Mot. 7 (citing *Donahue v. United States*, 33 Fed. Cl. 600, 605 (1995) ("[T]he IRS has the authority under I.R.C. § 6402(a) . . . to credit tax overpayments against tax deficiencies for prior years[.]")); *see also* I.R.C. § 6402(a) ("In the case of any overpayment, the Secretary . . . may credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax on the part of the person who made the overpayment[.]").

For the tax years at issue in this case, the IRS credited Plaintiffs' overpayments (made through withholding) towards federal taxes due.  Gov't Mot. 7.  For tax years 2006, 2007, 2010 and 2011, the IRS also applied those credits towards Plaintiffs' unpaid tax liabilities in prior years.  Gov't Mot. 7.  The credits in tax years 2008 and 2009 remain in Plaintiffs' account, because they have been frozen, while Plaintiffs litigate against the IRS.  Gov't Mot. 7.  Thus, "there is no relief that the [c]ourt could offer [Plaintiffs] on these claims—the relief has already been granted by the IRS."  Gov't Reply 3.

---

I.R.C. § 6703(c)(1).  In addition, a taxpayer is not required to prepay "interest and penalties when the taxpayer only disputes the tax assessment."  *Shore*, 9 F.3d at 1524.

### b.  Plaintiffs' Response.

Plaintiffs respond that the IRS's decision to credit Plaintiffs' overpayments against tax deficiencies for prior years was unlawful, because a February 9, 2012 IRS Notice stated that "collection action[s were] suspended."  Pl. Resp. ¶ 11–12.  Plaintiffs also argue that they were unaware, at the time of filing the Complaint, that the IRS had credited their accounts with overpayments from other years.  Pl. Resp. ¶¶ 7–10; *but see* Pl. Sur-Reply ¶ 11 ("Defendant has not refunded overpayments.").  Plaintiffs further assert that they were unaware for many years why the IRS deemed their tax returns to be frivolous.  Pl. Resp. ¶ 20 (explaining that the IRS has "from time to time stated no reason or changed its reason for alleging that [P]laintiffs' originally submitted returns were frivolous").

Plaintiffs further contend the Government failed to abide by stipulated decisions entered by the United States Tax Court on May 22, 2013 in Docket numbers 5516-12SL and 14482-10SL, because a statement for Plaintiffs' tax accounts from a "Payoff Calculator" lists tax penalties that are inconsistent with the stipulated decisions.  Pl. Resp. ¶¶ 47–48; *see also* Pl. Resp. Ex. A at 17–21.

Finally, Plaintiffs argue that the records presented by Government in the Motion To Dismiss are inconsistent with other tax records Plaintiffs received from the IRS over time, which Plaintiffs presented to the court as exhibits.  Pl. 10/23/13 Resp. ¶ 6; *see also id.* (explaining that certain IRS records of Plaintiffs' accounts are inconsistent).  Plaintiffs, however, do not identify which exhibits are inconsistent with the Government's records, but appear to reference exhibits attached to Plaintiffs' October 8, 2013 Sur-Reply.  Pl. Sur-Reply Ex. A at 5–16.[16]

### c.  The Court's Resolution.

None of the material facts are genuinely in dispute in this case.  Both parties agree that Plaintiffs overpaid their taxes during the relevant tax years.  Compl. ¶¶ 69, 80, 89, 95, 100, 105; *see also* Gov't Mot. 2–4 (citing Gov't Mot. Ex A (IRS Certificates Of Assessment re: 2006–2011)).  The parties also agree that the IRS levied civil penalties against Plaintiffs for a variety of different tax years.  Pl. Sur-Reply Ex A at 5–16 (IRS statements of account detailing Plaintiffs' frivolous filing fees for tax years 2005 and 2006); Pl. Ex. B at 7 (IRS letter rejecting Plaintiffs' claim for abatement of civil penalties for tax year 2007); Pl. Ex. B at 30 (February 9, 2012 Notice Of Determination regarding Plaintiffs' request for a Collection Due Process Hearing on civil penalties for tax years 2005–2007); Gov't Mot. 4 (citing Gov't Mot. Ex. B (IRS Certificates Of Assessment re: civil penalties)).  In addition, Plaintiffs also do not dispute that overpayments have been credited to satisfy outstanding liabilities for other tax years, although they disagree with the IRS's decision to do so.  *See* Pl. Resp. ¶¶ 7–10 (stating only that Plaintiffs did not know at the time of filing the Complaint that the IRS had "already credited [P]laintiffs' account," but

---

[16] Plaintiffs also invoke the right against self-incrimination founded in the Fifth Amendment to the United States Constitution.  Pl. 10/23/13 Resp. ¶ 4 (citing *United States v. Sullivan*, 274 U.S. 259, 263 (1927) (holding that the privilege against self-incrimination does not justify an outright refusal to file any income tax return at all)).

are now aware); *see also id.* ¶ 11 (Plaintiffs knew "of the disposition of refunds owing for years 2010 and 2011."); Pl. Sur-Reply ¶ 8 (same); Pl. Resp. Ex. A at 19 (Stipulated Decision of United States Tax Court stating that "credits in the amounts of $157.50 and $36.24 were transferred from [Plaintiffs'] income tax accounts for the taxable years 2010 and 2011 . . . to [Plaintiff] Norman Diamond's civil penalty account for the taxable year 2006.").

Therefore, Plaintiffs' generalized statement that the IRS's records of account are temporally inconsistent has no bearing on the accuracy of the records on which the Government relies to support the August 23, 2013 Motion To Dismiss. Plaintiffs do not dispute the accuracy of the IRS's records of their accounts *per se*, but contend that the balance and payments listed evolved over time. This fact, however, reflects only that those accounts had accrued interest, had been updated to reflect stipulated judgments by the United States Tax Court, and had accrued penalties assessed by the IRS over a long period of time. *See generally* Gov't Mot. Ex. B at B-1–B-21 (detailing interest assessed, additional penalties, and fees and costs imposed on Plaintiffs' civil penalty accounts). Plaintiffs also readily admit that they "do not know how to compute what the amounts should be." Pl. 10/23/13 Resp. ¶ 6. Construing the facts in the light most favorable to the Plaintiffs, at best, this reflects the "existence of *some* alleged factual dispute . . . [insufficient] to defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis added); *see also id.* at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."); *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002) ("[T]he non-moving party must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial."). The evolution of these records over time simply reflects the self-evident proposition that tax records are continually updated and demonstrates the costs Plaintiffs have imposed on the IRS to manage, litigate, and attempt to collect on Plaintiffs' accounts.

In short, the dispute before the court is whether the Government has shown Plaintiffs are not entitled to refunds for the 2006–2011 tax years. The IRS has the authority to withhold a tax refund and apply overpayments to a taxpayer's other outstanding liabilities. *See* I.R.C. § 6402(a) (authorizing the IRS to withhold tax refunds in order to apply them to debts owed to the IRS); *see also Donahue*, 33 Fed. Cl. at 605 (holding that the IRS was authorized to withhold a taxpayer's refund in order to satisfy other debts); *Becker v. United States*, 878 F.2d 1444, 1989 WL 43289 *1 (Fed. Cir. May 3, 1989) (I.R.C. 6402(a) "affords the Commissioner, and concomitantly denies [to taxpayers], authority unilaterally [to] direct the application of overpayments to particular tax periods."). That is exactly what occurred here. Plaintiffs' overpayments, in the form of withholding, for the 2006–2011 tax years were treated as credits for those tax years and applied to mitigate other substantial tax liabilities.[17] Plaintiffs have received the benefit of the refund they seek, albeit in a form they seemingly do not desire. As

---

[17] As the Government points out, in two cases with Plaintiffs the United States Tax Court "recently reduced the amount of certain frivolous filing penalties assessed against them for 2005–2007." Gov't Reply 4 (citing Pl. Resp. Ex. A at 17–21). Those decisions reduce those particular penalties to $1,000. Gov't Reply 4. That reduction, however, does not entitle Plaintiffs to a refund, since the overpayments at issue here "are still insufficient to cover even the reduced 2005 and 2006 penalty amounts, let alone the $5,000 frivolous filing penalty for 2008." Gov't Reply 4.

such, the court can afford them no further relief. *See, e.g., In re Luongo*, 259 F.3d 323, 335 (5th Cir. 2001) ("[T]he [taxpayer] is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability.").

Plaintiffs' remaining arguments also are unavailing. For example, Plaintiffs contend that the IRS's "collection of refunds" was unlawful because a February 9, 2012 IRS Notice of Determination explained that "collection action was suspended." An Attachment to that Notice explained that the "collection statute has been suspended; the collection period allowed by statute to collect these taxes has been suspended by the appropriate computer codes for the tax periods at issue." Pl. Ex. B at 33. As the title of the Notice of Determination suggests, the collection statute suspension concerns I.R.C. § 6330 and § 6331. I.R.C. 6330(e)(1) provides that when a collection due process hearing is requested, "the *levy actions which are the subject of the requested hearing . . . shall be suspended* for the period during which such hearing, and appeals therein, are pending." I.R.C. § 6330(e)(1) (emphasis added). I.R.C. 6331(a), however, provides that, "if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, the Secretary is authorized to collect such tax by levy upon property belonging to the taxpayer." *Moore v. C.I.R.*, 114 T.C. 171, 174 (2000). I.R.C. 6331(d) requires "the Secretary . . . to provide the taxpayer with notice, including notice of the administrative appeals available to the taxpayer, before proceeding with collection by levy on the taxpayer's property." *Id.* Therefore, I.R.C. 6331, in combination with I.R.C. 6330, prohibits "the collection of taxes by way of a levy on a taxpayer's property" unless certain procedural safeguards have been followed. *Sego v. C.I.R.*, 114 T.C. 604, 608 (2000).

By its own terms, the February 9, 2012 IRS Notice Of Determination and, by extension I.R.C. § 6330 protect the taxpayer against "levy actions," not the IRS's decision to apply overpayments to a taxpayer's outstanding liabilities in prior years. In this proceeding, Plaintiffs do not challenge the IRS's decision to levy against their property, but instead seek refunds for the tax years 2006–2011. Nor could Plaintiffs mount such a challenge in the United States Court of Federal Claims, since I.R.C. § 6330(d) provides only for judicial review of the IRS's decision to levy upon a taxpayer property in the United States Tax Court after filing a timely appeal. *See* I.R.C. § 6330(d) ("The person may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court, shall have jurisdiction with respect to such matter)."). The February 9, 2012 IRS Notice is therefore irrelevant to the legal issue of whether Plaintiffs are entitled to refunds.

To the extent that Plaintiffs assert the Government did not abide by stipulated decisions of the United States Tax Court, any such claim is insufficiently pled. *See* RCFC 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." (internal citations omitted)). The Tax Court decisions entered on May 22, 2013 reduce the amounts of penalties assessed against Plaintiffs for the tax years 2005–2007, and concern the February 9, 2012 IRS Notice of Determination. Pl. Resp. Ex. A at 17–21. Those decisions explicitly state, however, that the reductions do not impact any interest on outstanding liabilities, and that "interest will be assessed as provided by law," together with "fees and collection costs . . . due and owing." Pl. Resp. Ex. A at 18; *see also id.* at 21 (same).

To substantiate an alleged violation of those Tax Court decisions, Plaintiffs provide a snapshot of a "Payoff Calculator" table dated May 29, 2013, seven days after issuance of the Tax Court decisions. This table is provided without context or any explanation as to its meaning, and does not disaggregate taxes or penalties, but instead lumps them together into a single amount for each tax year. There is no way to tell what penalties and taxes are, or are not, included in a given year. Such vagueness and ambiguity makes it impossible for the court to determine whether a claim within the jurisdiction of the United States Court of Federal Claims exists, and certainly does not provide sufficient "factual content that allows the court to draw the reasonable inference that the [Government] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, this claim also must be dismissed. *See Twombly*, 550 U.S. at 555.

## III. CONCLUSION.

For these reasons, the Government's August 23, 2013 Motion To Dismiss is granted. Accordingly, the Clerk of Court is directed to dismiss the April 25, 2013 Complaint.

**IT IS SO ORDERED.**

SUSAN G. BRADEN
Judge